## IN THE UNITED STATES DISTRICT COURT
## FOR THE NORTHERN DISTRICT OF ALABAMA
## WESTERN DIVISION

JOHN O. BANKS, III and LORETTA
DULANEY ARNOLD,

     **Plaintiffs,**

v.

SEARS, ROEBUCK AND CO., et al.,

     **Defendants.**

     **Case No.:  CV 02-P-3052-W**

**ENTERED**

**APR 14 2004**

### MEMORANDUM OPINION

The court has before it Plaintiff Arnold's Motion to Remand (Doc. # 5).  Having received this case by reassignment, the court held a status conference on February 18, 2004, to discuss whether the December 13, 2002, removal of this action by Defendants was appropriate in the first instance.

Defendants claim, pursuant to 28 U.S.C. § 1332, that the parties are completely diverse and that the amount in controversy exceeds $75,000.  Defendants also claim that, because Sears National Bank ("SNB") is a national bank, the National Bank Act, 12 U.S.C. § 21 *et seq.,* ("NBA"), completely preempts the Plaintiffs' state law claims and therefore federal question jurisdiction exists pursuant to 28 U.S.C. § 1331 and corresponding case law.[1]  Plaintiffs have moved to remand the action on the grounds that the amount in controversy does not exceed $75,000 and that the NBA

---

[1] Although Defendants' original Notice of Removal asserted as a basis for removal only diversity jurisdiction, (Doc. # 1), Defendants later added federal question jurisdiction under the post-removal case of *Beneficial National Bank v. Anderson*, 123 S.Ct. 2058 (2003) (reversing the Eleventh Circuit's decision in *Beneficial National Bank v. Anderson*, 287 F.3d 1038 (11th Cir. 2002)). (Doc. # 38). Although Eleventh Circuit law permits a court to reject an alternative basis for jurisdiction if the defendant failed to plead that basis in its notice of removal, *see Ervast v. Flexible Prods., Co.*, 346 F.3d 1007, 1012 n.4 (11th Cir. 2003), this court will consider the Defendants' federal question argument because Defendants have demonstrated that their position is based upon a change in the law subsequent to the filing of Defendants' notice of removal.



does not completely preempt their claims.

The court has considered both bases for jurisdiction and removal. For the reasons stated herein, the court concludes that, although the NBA and regulations promulgated thereunder arguably address the marketing practices challenged in this case, the provisions do not state a cause of action or federal remedy that evidence an intent by Congress to completely preempt the state law claims in this matter and therefore, there is no basis for federal question removal based upon the defense of complete preemption. The court also finds that there is no diversity jurisdiction over this matter because the amount in controversy does not exceed $75,000.00. This action is therefore due to be remanded to the Circuit Court of Greene County.

## I.   Procedural History

This is a proposed class action lawsuit challenging allegedly deceptive marketing practices. Originally, this case was filed in the Circuit Court of Greene County by John O. Banks, III and Loretta Dulaney Arnold, on behalf of themselves and putative class members, against Defendants Sears, Roebuck & Co. ("Sears"); SNB; Cendant Membership Services, Inc.("Cendant"); and Allstate Insurance Company ("Allstate"). Plaintiffs Banks and Arnold were Sears credit card holders; Banks was a participant in the Sears Credit Protection Plan/Sears Account Care Plan ("SCPP") and Arnold participated in the Lost/Stolen Card Service, a/k/a Credit Card Registration program ("CCR"). Plaintiffs contend that Defendants had contractual agreements among themselves to market the SCPP and CCR programs only to the Sears credit card customers who were *least likely* to use the services or benefits provided.[2]  Plaintiffs' complaint asserts claims for breach of contract, fraudulent

---

[2] Plaintiffs allege that, as Sears customers, they were third-party beneficiaries to these contractual marketing agreements.

suppression, unjust enrichment, breach of the implied covenant of good faith and fair dealings, conspiracy, and violations of the Illinois Consumer Fraud and Deceptive Practices Act.

Defendants removed this action to this court on December 13, 2002. (Doc. # 1). Plaintiffs filed a motion to remand on January 13, 2003. (Doc. # 5). On February 7, 2003, Defendants filed an opposition to the motion to remand (Doc. # 14), and later on June 17, 2003, Defendants supplemented that opposition with their federal question jurisdiction argument based upon the Supreme Court's June 2, 2003 decision in *Beneficial National Bank v. Anderson*, 123 S.Ct. 2058 (2003). (Doc. # 38). The undersigned received this case by reassignment on October 9, 2003 (Doc. # 39), and Plaintiffs subsequently filed a reply brief in support of their motion to remand on November 7, 2003. (Doc. # 42). At a status conference in this case held on February 18, 2004, the court heard argument on both bases for jurisdiction and focused the parties on the preemption issue. The court requested additional briefing on one aspect of Defendants' preemption argument and, accordingly, Defendants filed a supplemental brief on March 3, 2004 (Doc. # 59); Plaintiffs filed a response brief on March 9, 2004 (Doc. # 64); Defendants filed a supplemental brief on March 8, 2004 (Docs. # 63);[3] Plaintiffs filed a reply brief on March 10, 2004 (Doc. # 66); and Defendants filed a final surreply on March 15, 2004. (Doc. # 68). The motion to remand is now *fully* briefed.

## II.    Discussion

The burden of establishing subject matter jurisdiction for the purpose of a valid removal to this court is on the removing party. *Williams v. Best Buy*, 269 F.3d 1316, 1319 (11th Cir. 2001). Section 1441, permitting removal of a state court action to federal court, provides in pertinent part:

---

[3] Although Defendants also filed a supplemental brief on March 9, 2004 with a revised Certificate of Service, (Doc. # 65), the second brief does not appear to substantively alter Defendants' argument.

> **(a)** Except as otherwise expressly provided by Act of Congress, any civil action brought in a State court of which the district courts of the United States have original jurisdiction, may be removed by the defendant or the defendants, to the district court of the United States for the district and division embracing the place where such action is pending . . . .
>
> **(b)** Any civil action of which the district courts have original jurisdiction founded on a claim or right arising under the Constitution, treaties or laws of the United States shall be removable without regard to the citizenship of the parties. Any other such action shall be removable only if none of the parties in interest properly joined and served as defendants is a citizen of the State in which such action is brought.

28 U.S.C. § 1441(a)(b).  Federal removal statutes are strictly construed and remand is appropriate at any time prior to final judgment when it appears that the district court lacks subject matter jurisdiction.  28 U.S.C. § 1447(c); *see Burns v. Windsor Ins. Co.*, 31 F.3d 1092, 1095 (11th Cir. 1994).  "Federal courts are courts of limited jurisdiction. While a defendant does have a right, given by statute, to remove in certain situations, plaintiff is still the master of his own claim." *Burns*, 31 F.3d at 1095.  Therefore, "where plaintiff and defendant clash about jurisdiction, uncertainties are resolved in favor of remand." *Burns*, 31 F.3d at 1095.  The court will analyze each basis for jurisdiction separately.

### A.     Federal Question Jurisdiction

Federal question jurisdiction is conferred by Section 1331, which provides, "The district courts shall have original jurisdiction of all civil actions arising under the Constitution, laws, or treaties of the United States." 28 U.S.C. § 1331.  Defendants assert that federal question jurisdiction exists, and that this case was properly removed, because the NBA completely preempts the Plaintiffs' state law claims in this case.

4

The issues of whether a claim is preempted, and whether a case is removable, are related but not the same.  The general rule governing the removal of cases based upon the defense of preemption was established by the Supreme Court in *Caterpillar Inc. v. Williams*, 482 U.S. 386 (1987): "[I]t is now settled law that a case may *not* be removed to federal court on the basis of a federal defense, including the defense of preemption, even if the defense is anticipated in the plaintiff's complaint, and even if both parties concede that the federal defense is the only question truly at issue." *Caterpillar*, 482 U.S. at 393 (emphasis added).   Notwithstanding, the Court has created a limited exception to this rule for "complete preemption" which applies only when the preemptive force of a statute is so "extraordinary" that it "converts an ordinary state common-law complaint into one stating a federal claim for purposes of the well-pleaded complaint rule." *Metropolitan Life Insurance Co. v. Taylor*, 107 S.Ct. 1542, 1547 (1987).   The Eleventh Circuit has cautioned that, "the proper inquiry focuses on whether Congress intended the federal cause of action to be [the] exclusive [remedy] rather than on whether Congress intended that the cause of action be removable." *Beneficial*, 123 S.Ct. at 2064 n.5.   When an area of state law has been completely preempted, any claim based on that state law is considered, from its inception, a federal claim, and therefore properly removable under § 1441(b). *Caterpillar*, 482 U.S. at 393-94.

### 1.     The Supreme Court's holding in *Beneficial*

The Defendants' NBA preemption argument in this case was initially premised upon the Supreme Court's decision in *Beneficial National Bank v. Marie Anderson*, 123 S.Ct. 2058 (2003).  In *Beneficial*, borrowers who secured tax refund anticipation loans brought suit in Alabama state court against H & R Block, Inc. and Beneficial National Bank ("Beneficial") alleging, among other things, that the interest rates charged violated state usury laws. *Beneficial*, 123 S.Ct. at 2062.  H&R

5

Block, Inc. and Beneficial removed on the basis of federal question, arguing that the exclusive remedy for the usury claims was provided by §§ 85 and 86 of the NBA. *Id.* The district court denied the motion to remand, but the Eleventh Circuit reversed, holding that the NBA did not *completely* preempt state usury laws. *Id.* The Supreme Court reversed the Eleventh Circuit and held that the claim was removable because §§ 85 and 86 of the NBA completely preempt any state law usury claim against a national bank. *Beneficial*, 123 S.Ct. at 2063-64.

The Defendants argue that *Beneficial* controls in this case, resulting in NBA preemption of the Plaintiffs' state law deceptive marketing claims. (Docs. # 38, 59, 63, 68). Defendants claim that their SCPP and CCR credit protection programs fall under the jurisdiction of the NBA by way of § 24, a broad enabling provision of the NBA which grants national banks the power "to exercise . . . all such incidental powers as shall be necessary to carry on the business of banking." 12 U.S.C. § 24.[4] Defendants argue that, based on the reasoning in *Beneficial*, § 24 completely preempts *any*

---

[4] Although Defendants initially suggested that §§ 85 and 86 preempt the claims in this case, the court indicated at the February 18 status conference that it was not persuaded by this argument given that §§ 85 and 86 exclusively address usurious rates and overcharges, not credit protection programs or marketing. As the Supreme Court noted in *Beneficial*, "Sections 85 and 86 serve distinct purposes. The former sets forth the substantive limits on the rates of interest that national banks may charge. The latter sets forth the elements of a usury claim against a national bank, provides for a 2-year statute of limitations for such a claim, and prescribes the remedies available to borrowers who are charged higher rates and the procedures governing such a claim." *Beneficial*, 123 S.Ct. at 2063. Given this court's reluctance to analyze the marketing claims under §§ 85 and 86, Defendants shifted the focus of their preemption argument to § 24. (Doc. # 59). Defendants rely on an Alabama Court of Civil Appeals case, *Steele v. First Deposit National Bank*, 732 So.2d 301 (Ala. Civ. App. 1999), for the proposition that credit protection insurance programs, and therefore the claims in this case, fall under the general "incidental powers" language of § 24. This court does not find Defendant's reliance on *Steele* to be persuasive or helpful. In *Steele*, the court considered whether credit protection insurance programs constituted "the business of insurance" and thus were subject to the McCarren Ferguson Act. *Steele*, 732 So.2d at 304. Although the *Steele* opinion, in dictum, theorized that credit protection insurance programs were encompassed by the NBA, it was not the holding of the case. *Id.* More importantly, however, this court is not bound by the Alabama Court of Civil Appeals' interpretation of a federal statute's breadth, nor can the *Steele* opinion guide

state law claims that arise from a national bank's exercise of incidental powers necessary to banking, including the claims in this case.

As a threshold issue, the court does not believe that § 24 falls within the ambit of *Beneficial*'s holding that certain sections of the NBA completely preempt state law. *Beneficial* specifically addresses preemption by §§ 85 and 86; the Court did not even consider the breadth of § 24 nor did it find that § 24 played a role in preempting the state usury claims in that case. The Court focused exclusively on the field of state usury laws regulating interest rates, recognizing its "longstanding and consistent construction of the National Bank Act as providing an exclusive federal cause of action for *usury* against national banks," and the need for "[u]niform rules limiting the liability of national banks and prescribing exclusive remedies for their *overcharges*." *Beneficial*, 123 S.Ct. 2064 (emphasis added). Accordingly, the Court held:

> In actions against national banks for usury, [§§ 85 and 86] supersede both the substantive and the remedial provisions of state usury laws and create a federal remedy for overcharges that is exclusive, even when a state complainant, as here, relies entirely on state law. Because §§ 85 and 86 provide the exclusive cause of action for such claims, there is, in short, no such thing as a state-law claim of usury against a national bank. Even though the complaint makes no mention of federal law, it unquestionably and unambiguously claims that petitioners violated usury laws. This cause of action against national banks only arises under federal law and could, therefore, be removed under § 1441.

*Id.* The limited *Beneficial* holding does not extend the doctrine of complete preemption to § 24.

## 2.   Does § 24 Completely Preempt the Plaintiffs' State Law Claims?

The court therefore is faced with an issue of first impression in this jurisdiction--does § 24 of the NBA completely preempt state law claims like those in this case? Defendants have asked this court to find that the "incidental powers" language of § 24 of the NBA includes the CCR and SCPP

---

this court's analysis of whether or not this case was properly removed.

programs in this case, confers exclusive jurisdiction to the Office of the Comptroller of Currency

("OCC") in the regulation of those programs, and preempts the Plaintiffs' claims in this case. (Doc.

# 59).   First, Defendants maintain that 12 U.S.C. § 1818(b)(1) arms the OCC with a "regulatory

sword" as "the sole authority . . . to regulate the activities of national banks, including all matters

incidental to the business of banking." (Doc. # 59, at 3-4).   Next, relying on an Eighth Circuit case

addressing debt cancellation products, *First National Bank of Eastern Arkansas v. Taylor*, 907 F.2d

775 (8th Cir. 1990), Defendants argue that the OCC has determined that the sale of products like the

ones in this case by national banks *are incidental* to the business of banking and thus authorized by

§ 24. (Doc. # 59, at 5).   Defendants cite to an OCC Advisory Letter and district court cases from

other jurisdictions as evidence that the OCC has decided it is their exclusive province to regulate

deceptive trade practices committed by national banks.   (Doc. # 59, at 5-6).   Finally, Defendants

maintain that 12 C.F.R. § 7.4009(a) and (b)[5] provide for the preemption of claims arising from the

exercise of a national bank's incidental powers, including the deceptive marketing claims in this

case. (Doc. # 59, at 4-7).

Even assuming that the CCR and SCPP programs challenged in this case fall within the §

24 "incidental powers" of a national bank, the court finds no basis to conclude that Congress

---

[5] § 7.4009 provides, in pertinent part:

> (a)     <u>Authority of national banks</u>.   A national bank may exercise all powers authorized to it under Federal law, including conducting any activity that is part of, or incidental or, the business of banking . . . .

> (b)     <u>Applicability of state law.</u>  Except where made applicable by Federal law, state laws that obstruct, impair, or condition a national bank's ability to fully exercise its powers to conduct activities authorized under Federal law do not apply to national banks.

8

intended § 24 to completely preempt the Plaintiffs' claims in this case, much less preempt *any and all* state law claims arising from a national bank's exercise of incidental powers.  As the Supreme Court noted in *Beneficial*, "only if Congress intended [the applicable section] to provide *the exclusive cause of action for [] claims against national banks* would the statute be comparable to the provisions that we construed in the *Avco* and *Metropolitan Life* cases [as completely preempting the field]." *Beneficial*, 123 S.Ct. at 2063 (emphasis added).  Not only is this court concerned about the floodgate ramifications of finding that federal courts have exclusive jurisdiction over all claims arising from the exercise of a national bank's incidental powers, but the court is even more troubled by the fact that § 24, unlike §§ 85 and 86, provides no remedy to the consumer.[6]  The Western District of Kentucky recently addressed the same issue and aptly concluded,

> Preemption [under § 24], if it does exist, does not necessarily equate with removeability.  The Supreme Court [in *Beneficial*] found that complete preemption existed where Congress had created a federal remedy and effectively supplanted state law claims for usury against national banks. [*Beneficial*], 123 S.Ct. at 2064.  The court then concluded that a claim for violation of usury laws against a national bank only arises under federal law, and therefore, such singularly federal claims were removable under § 1441.  *Id.*  The logic of the Supreme Court's analysis in [*Beneficial*], does not extend to § 24 [] as § 24 is nothing more than a broad enabling provision.  It creates no remedy.  Therefore, it is not the sort of extraordinary provision found to convert and eliminate a state law cause of action.

*Hancock v. Bank of America*, 272 F.Supp.2d 608, 612 (W.D.Ky. 2003).  This court agrees with the analysis in *Hancock* and finds that the broad language of § 24 does evidence Congressional intent to create an exclusive remedy for actions against national banks related to the exercise of incidental

_____

[6] Although Defendants point to new OCC regulations that purportedly "establish a consumer grievance process," in relation to the sale of insurance by national banks, (*see* Doc. #63), this regulation advises consumers to call a customer assistance group if they suspect a bank is "selling, soliciting, advertising, or offering insurance products" in violation of the regulations.  12 C.F.R. Pt. 14, App. A.  This is not a remedy, nor does it convert § 24 into a remedial provision.

9

powers; therefore, § 24 cannot serve as a basis for complete preemption of the claims in this case.[7]

Accordingly, the court finds that the Plaintiffs' claims in this case are not properly considered federal

claims from their inception and therefore removal under § 1441(b) was improper.

### B.    Diversity Jurisdiction

Having determined that this case was not properly removed under federal question

jurisdiction, the court now turns to the issue of diversity jurisdiction.  Section 1332 provides, in

pertinent part, "The district courts shall have original jurisdiction of all civil actions where the matter

in controversy exceeds the sum or value of $75,000, exclusive of interest and costs, and is between

. . . citizens of different States."  28 U.S.C. § 1332.  The parties in this case do not dispute that

complete diversity exists.  (*See* Docs. # 5, 14, at n.1).  Instead, the parties disagree that the amount

in controversy requirement of § 1332 is satisfied.  Plaintiffs' ad damnum clause states, in part,

> The Plaintiffs and putative class members have monetary damages of less than
> $1,000.  By seeking damages for breach of contract, breach of the implied covenant
> of good faith and fair dealing, and violations of the Illinois Consumer Fraud and
> Deceptive Practices Act, the Plaintiffs and putative class members individually seek
> less than $75,000 per person.  This amount includes both punitive damages and
> compensatory damages.  The Plaintiffs do not intend in any manner to aggregate
> their claims for punitive damages, attorney fees, interest, or compensatory damages
> so as to exceed the jurisdictional requirement of damages greater than $75,000.  The
> Plaintiffs and putative class members specifically waive their right to recover greater
> than $75,000 in compensatory or punitive damages.  The Plaintiffs and putative class

---

[7] Although the subject of only a footnote in Defendants' brief to the court, it is important to note that the provision of the CFR upon which Defendants rely for their preemption argument specifically carves out certain claims which are *not preempted* by § 24: "State laws on the following subjects are not inconsistent with the powers of national banks and apply to national banks to the extent that they only incidentally affect the exercise of national bank powers: (i) Contracts; (ii) Torts; (iii) Criminal law; (iv) Rights to collect debts; (v) Acquisition and transfer of property; (vi) Taxation; (vii) Zoning; and (viii) Any other law the effect of which the OCC determines to be incidental to the exercise of national bank powers . . . ."  12 C.F.R. § 7.4009 (c)(2).  At least some, if not all, of the Plaintiffs' claims in this case fall within these non-preempted provisions.  There is no evidence that Congress intended to create an exclusive remedy in § 24.

members do not make any claim to punitive or compensatory damages that would
allow for the exercise of federal diversity jurisdiction's amount-in-controversy
requirement.

(Doc. # 1, Ex 1, at 18).

For purposes of determining whether a removal was proper, the critical date is the date of
removal, because "if jurisdiction was proper at that date, subsequent events, even the loss of the
required amount in controversy, will not operate to divest the court of jurisdiction." *Poore v.
American-Amicable Life Ins. Co. of Tex.,* 218 F.3d 1287, 1289-91 (11th Cir. 2000). When a case
involves a putative class of plaintiffs, only one named plaintiff's damages must satisfy the
jurisdictional requirement. *Allapattah Services, Inc. v. Exxon Corp.*, 333 F.3d 1248, 1256 (11th Cir.
2003). However, the court cannot aggregate the value of multiple plaintiffs' claims simply because
they are joined in one lawsuit. *Leonard v. Enterprise Rent-a-Car*, 279 F.3d 967, 974 (11th Cir.
2002).[8] With respect to class punitive damages claims, the Eleventh Circuit has held that "for
amount in controversy purposes, a class punitive damages claim must be allocated *pro rata* to each
class member." *Cohen v. Office Depot, Inc.*, 204 F.3d 1069, 1074 (11th Cir.2000).

When a plaintiff specifically claims less than the jurisdictional amount in his complaint, such
as in this case, a removing defendant carries a "heavy burden" and must prove to a "legal certainty"
that the plaintiff would exceed $75,000 if he prevailed. *Burns*, 31 F.3d at 1095. If the damage
request for a particular claim is not specified, the defendant must prove the same by the lower
burden of "preponderance of the evidence." *Id*. at 1096 n.6. In support of their claim that diversity

---

[8] Although aggregation is appropriate "when several plaintiffs unite to enforce a single title
or right, in which they have a common and undivided interest," *Zahn v. International Paper Co.*, 414
U.S. 291, 294 (1973), that is not the case here where the claims for compensatory damages arose
from each class member's individual participation in the SCPP or CCR program.

jurisdiction exists in this case, Defendants assert two alternative arguments based upon (1) the value of each Plaintiff's claim, and (2) the aggregate value of the Plaintiffs' alleged claim for equitable relief.

First, Defendants argue that the amount in controversy as to *each Plaintiff* exceeds $75,000. (Doc. # 1). Defendants point to the omission of a specific reference to "conspiracy" in the Plaintiffs' ad damnum clause as "evidence" that Plaintiffs did not intend to limit their recovery for this count. (Doc. # 1). Even assuming this omission was not a mere typographical error, the court is not persuaded by the argument that Plaintiffs failed to specify damages sought for conspiracy.[9] Plaintiffs' ad damnum clause unequivocally states that each plaintiff has "monetary damages of less than $1,000" and further evidences each Plaintiff's waiver of any right to recover greater than $75,000. (Doc. # 1, Ex. 1). That Plaintiffs inadvertently omitted a *specific* reference to the conspiracy count in their ad damnum clause does not render null and void their clear waiver of "*any claim* to punitive or compensatory damages that would allow for the exercise of federal diversity jurisdiction's amount-in-controversy requirement." (*See* Doc. # 1, Ex. 1; Doc. # 5 (emphasis added)).

Even assuming that the court were to accept Defendants' argument that Plaintiffs did not limit their recovery for the conspiracy count, that does not automatically lead to the conclusion that Plaintiffs' total recovery would exceed $75,000. At best, Plaintiffs' damages for conspiracy would be deemed unspecified and Defendants would have avoided the higher burden of "legal certainty"

_____

[9] Likewise, the court is not impressed by Defendants' assertion that the causation allegation of Plaintiffs' conspiracy claim is really an open-ended claim for damages or by the suggestion that Plaintiffs' hyperbolic pleading style indicates their conspiracy claim is worth more than a less artfully pled conspiracy claim.

proof. Nevertheless, Defendants would still be required to prove by a preponderance of the evidence that a recovery of less than the jurisdictional amount is outside the range of permissible awards for Plaintiffs' claims. *Burns*, 31 F.3d at 1096.

The court finds that under *either* standard- legal certainty or preponderance of the evidence- no single class member stands to recover more than $75,000 in actual damages from this litigation. Although the exact amount recoverable for each Plaintiff is unknown, the amounts are undoubtedly small as evidenced by the actual damages of each named Plaintiff.[10] As noted above, the court cannot aggregate the value of multiple plaintiffs' claims to reach the amount-in-controversy, and Defendants have failed to demonstrate that the pro rata recovery, including recovery for all claims asserted by that Plaintiff and a recovery for attorneys' fees,[11] would exceed $75,000. Thus, the court

---

[10] Named Plaintiff Arnold's economic damages are $79.90; in order for her award to exceed $75,000, she would have to recover 938 times her actual damages. (Doc. # 5). Banks' economic damages are $622.83; in order for his damages award to exceed $75,000, he would have to recover 120 times his actual damages. (Doc. # 5). Defendants claim that, "despite the relatively small economic costs, Plaintiffs have sought to recover $74,999.00 in relation to these small economic losses." (Doc. # 14, at 6). At the February 18, 2004, Defendants argued that the ad damnum clause establishes a "floor" for recovery, not a "ceiling," and that Plaintiffs' potential recovery must *begin* at $74,999.00. The court disagrees. Plaintiffs' ad damnum clause establishes a ceiling, not a floor: "The Plaintiffs and putative class members have monetary damages of less than $1,000 . . . Plaintiffs and putative class members individually seek *less than $75,000* per person." (Doc. # 1, Ex. 1 (emphasis added)). Under Plaintiffs' ad damnum clause, the recovery sought could fall anywhere within a range of $0.00 (the "floor") to $74,999.99 (the "ceiling").

[11] Plaintiffs' motion for remand anticipated that Defendants would claim that Plaintiffs' attorneys fees should be considered *in the aggregate* for the purpose of satisfying the amount in controversy requirement. (Doc. # 5). In their response, Defendants are quick to point out that they "do not contend that plaintiffs' respective attorneys' fees should be aggregated, but rather, each plaintiff's claim for attorneys' fees can be aggregated *with that plaintiff's other claim for damages*." (Doc. # 14, at 7). Nonetheless, even assuming that the court takes into consideration a potential award of attorneys' fees for each Plaintiff, the Defendants have not demonstrated by a preponderance of the evidence that added attorney's fee would "bump" the recovery over the jurisdictional amount.

finds that the potential recovery of each Plaintiff does not satisfy, to a legal certainty or by a preponderance of the evidence, the amount-in-controversy requirement for diversity jurisdiction.

Alternatively, Defendants argue that the *aggregated* damages sought through Plaintiffs' request for *equitable relief* meet the jurisdictional amount necessary for removal. (Doc. # 1). Defendants' argument is based on Plaintiffs' petition that the court "direct the Defendants to place the proceeds [or profits generated from the SCPP/CCR programs] into an escrow fund under court control." (Doc. # 1, Ex. 1). Defendants maintain that this request is actually a "claim for equitable relief in the form of the creation of the common escrow fund," and that, based on *Smith v. GTE Corp.*, 236 F.3d 1292, 1309 (11th Cir. 2001), the court can aggregate these "equitable claims" for jurisdictional purposes. (Doc. # 1, at 11). Plaintiffs deny they have sought equitable relief and counter that any references to profits generated from the SCPP/CCR programs were "stated solely for the purpose of establishing that the Defendants have chosen only predictably profitable customers that will not make claims under these insurance plans." (Doc. # 5, at 9).

Even if the court assumes that Plaintiffs have requested equitable relief in the form of an escrow fund of SCPP/CCR profits, the relief sought is the "equivalent of money damages" and thus is not properly aggregated for jurisdictional purposes. *Campbell v. General Motors Corp.*, 19 F.Supp.2d 1260, 1267 (N.D.Ala. 1998) (citing *Upp v. Mellon Bank, N.A.*, 510 U.S. 964 (1973) (refusing to aggregate equitable relief where "virtually all the relief sought is remedial by money damages.")). Moreover, the aggregation of equitable relief utilized in *Smith v. GTE Corp.*, 236 F.3d 1292 (11th Cir. 2001), is not applicable in this case. In *Smith,* "multiple plaintiffs [were] seek[ing] to enforce a single title or right in which they ha[d] a common and undivided interest." *Smith*, 236 F.3d at 1309. By contrast, the claims for compensatory damages in this case arose from each class

14

member's *individual participation* in the SCPP or CCR program.  Plaintiffs are not seeking to divide

up the entire pot of profits from the SCPP and CCR programs; rather, "each Plaintiff and putative

class member is seeking to recover the amount of money that it paid to the Defendants for CCR and

SCCP."  (Doc. # 5, at 12).  The court finds no basis for aggregation in this case.

Accordingly, because the court concludes that not one of the Plaintiffs, including the named

Plaintiffs, has met the jurisdictional amount-in-controversy requirement, and because there is no

basis to aggregate the value of the Plaintiffs' damage claims, it follows that there is no diversity

jurisdiction over the claims in this case and removal was not proper on that ground.

## III.    Conclusion

For the reasons stated above, this court lacks subject matter jurisdiction over the claims in

this case because the case was not properly removed under either federal question or diversity

jurisdiction.  Therefore, Plaintiffs' Motion to Remand (Doc. # 5) is due to be granted and this case

is due to be remanded to the Circuit Court of Greene County.  A separate order will be entered.

**DONE** and **ORDERED** this ___13th___ day of April, 2004.


**R. DAVID PROCTOR**
UNITED STATES DISTRICT JUDGE